**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DEBRA I. THOMAS,                              :

     Plaintiff,                              :

vs.                                          :          CA 11-0406-C

MICHAEL J. ASTRUE,                           :
Commissioner of Social Security,
                                             :
     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

     Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 19 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, and the Commissioner's brief,[1] it is determined that the

---

[1]     The parties waived oral argument in this case. (Doc. 17; *see* Doc. 20.)

Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

Plaintiff alleges disability due to degenerative disc disease, arthritis, and hypertension. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.      The claimant has not engaged in substantial gainful activity since September 15, 2009, the application date (20 CFR 416.971 *et seq.*).**
>
> .      .      .
>
> **2.      The claimant has the following severe impairments: degenerative disc disease (DDD), generalized arthritis with gout and hypertension (20 CFR 416.920(c)).**
>
> .      .      .
>
> **3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> .      .      .
>
> **4.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b), in function by function terms (SSRs 83-10 and 06-8p), with certain non-exertional restrictions associated with that level of exertion. The claimant's specific physical capabilities during the period of adjudication have been the ability to lift/carry up to 20 pounds occasionally and 10 pounds frequently; and balance occasionally. The claimant could work in a job**

---

[2]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 19 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**that would allow her to change position from sitting to standing without having to leave her workstation. The claimant could work in a job that would not require her to climb ladders/scaffolds/ropes; and in an environment that would not require work at unprotected heights or around dangerous equipment. The claimant could perform tasks that do not involve complex or detailed instructions due to her limited education.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

.     .     .

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant has DDD and generalized arthritis with gout, which results in the limitation on her ability to lift/carry up to 20 pounds occasionally and 10 pounds frequently; balance occasionally; work in a job that would allow her to change position from sitting to standing without having to leave her workstation; work in a job that would not require her to climb ladders/scaffolds/ropes; and work in an environment that would not require work at unprotected heights or around dangerous equipment.

The claimant has been treated by Dr. Barnes' office nearly every month since 2004.

.     .     .

On November 12, 2009, Dr. Barnes wrote an opinion letter, stating that he was asked to comment on the claimant's gait and station, limitation of range of motion in her spine, difficulty getting off the exam table, her ability to sit and rise, stand "and so forth." Dr. Barnes noted the claimant has been his patient since before 2004. She has arthritis in her hip, back

3

and knees; and she also has a history of hypertension. On her examination, the claimant had limitation to range of motion in her shoulders, elbows and wrists. She had some mild joint swelling in her wrists; and she had metacarpophalangeal (MCP) and proximal interphalangeal (PIP) joint changes in her fingers. She had "group strength" of 3-4/5 throughout her upper extremities. She had limitation of range of motion in her spine. She had difficulty bending, lifting, stooping and squatting, causing some difficulty getting off of the table. Dr. Barnes said the claimant had some crepitus in her knees and evidence of arthritic type change. She had a group strength of 3-4/5 throughout her lower extremities. The claimant has used an assistive device for 3-5 years that was prescribed by a physician. Dr. Barnes stated, "I think that the patient is permanently medically totally disabled due to her arthritic types of complaints." He added that she walks with a limp and uses a cane "pretty much all the time."

As noted above, the claimant underwent a consultative examination with Dr. West on December 14, 2009. The claimant complained of severe back and bilateral leg pain. . . . Dr. West noted the claimant has to "dope up" on Lortab and Robaxin to get any relief. . . . During the neurological assessment, the claimant's cranial nerves were grossly intact. No obvious motor or sensory deficit was reported. During the musculoskeletal examination, the claimant's grip strength was 5/5 bilaterally. Flexion and extension of both wrists and elbows was 5/5. Flexion, extension, abduction and adduction of both shoulders was 5/5. Plantar flexion and dorsiflexion was 5/5 bilaterally. Flexion and extension of both knees was 5/5. Flexion, extension, abduction, and adduction of both hips was 5/5. The straight leg raise was negative on the left, but positive on the right. The claimant could bend over and touch her toes and could do a squat. She walked with a gait using a cane on the right side. She would not do heel-toe maneuvers. Examination of all the joints revealed full range of motion and no contractures. Dr. West assessed the claimant with chronic back pain with lumbar DDD and osteoarthritis. Dr. West ordered x-rays of her back, which showed some degenerative disc disease at L4, L-5 and L5-S1 with some arthritic changes and bone spurring.

.      .      .

On January 25, 2010, Dr. Barnes completed a Physical Capacities Evaluation, and found the claimant had the following limitations in an eight-hour workday: sit for 2 hours at a time, for up to 2 hours per day; stand for 2 hours at a time, for up to 2 hours per day; walk for 2 hours at a time, for up to 2 hours per day; lift/carry up to 20 pounds occasionally;

4

use both hands for repetitive action such as simple grasping, but not for pushing and pulling of arm controls or fine manipulation; bend, squat, crawl and reach occasionally. Dr. Barnes assigned total restriction involving unprotected heights. He assigned moderate restriction involving being around moving machinery, exposure to marked changes in temperature and humidity, driving automobile equipment and exposure to dust, fumes and gases. Dr. Barnes opined that the claimant cannot use her feet for repetitive movements as in pushing and pulling of leg controls or climb[ing]. (Exhibit D8F).

Dr. Barnes also completed a Clinical Assessment of Pain Form on January 25, 2010, and noted the claimant's pain is present to such an extent as to be distracting to the adequate performance of daily activities or work; physical activity, such as walking, standing, bending, stooping and moving of the extremities would greatly increase pain to such an extent as to cause distraction from task or total abandonment of task; prescribed medication impacts the individual's work ability to the extent that drug side effects can be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention and drowsiness. Dr. Barnes also indicated the claimant has an underlying medical condition consistent with the pain she experiences. (Exhibit D8F).

.     .     .

As for the opinion evidence, Dr. Barnes has assigned a restriction for light work, *but he said she could perform a total of only six hours*-two hours each of sit, stand and walk. (Exhibit D8F). I give ***great weight to Dr. Barnes['] opinion in this exhibit with the exception of the limitation to only a total of six hours of work per day. Dr. Barnes did not indicate why the claimant could stand for two hours at a time, but only do that once during the day. This appears to be a product of the form itself; but otherwise, this form is consistent with the residual functional capacity developed above. Dr. Barnes also noted pain being a distraction, which I have accounted for by limiting the claimant to unskilled work.*** As discussed below, the vocational expert identified jobs consistent with Dr. Barnes' opinion in Exhibit D8F with the sit/stand option.

.     .     .

**5.      The claimant has no past relevant work (20 CFR 416.965).**

.     .     .

5

**6.     The claimant was born on July 20, 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).**

**8.     Transferability of job skills is not an issue in this case because claimant does not have past relevant work (20 CFR 416.968).**

**9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**

.        .        .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as production assembler (DOT Code 706.687-010), with approximately 333,000 available positions in the national economy and approximately 15,000 available positions in the State of Alabama; garment folder (DOT Code 789.687-066), with approximately 433,000 available positions in the national economy and approximately 4,000 available positions in the State of Alabama; and hand packaging (DOT Code 753.687-038), with approximately 212,000 available positions in the national economy and approximately 4,000 available positions in the State of Alabama.

I also asked the vocational expert whether the individual could perform any work in the national economy if the individual would have to step away from the workstation at unexpected times due to headaches that last 10-20 minutes. The vocational expert stated that this additional limitation would prevent the individual from being able to sustain employment. However, I give little weight to the claimant's testimony regarding the

frequency of her headaches because the record does not document frequent complaints of headaches, as discussed in detail above. While she testified that she has headaches daily that last for 10-20 minutes, the claimant has only mentioned headaches to Dr. Barnes 8 times since March 16, 2004. As discussed above, the claimant generally reported headaches associated with sinus symptoms.

I also asked the vocational expert whether the individual could perform any work in the national economy with the limitations set forth in Exhibit D8F. The vocational expert stated that these limitations restrict the claimant to less than a full range of sedentary work because it allows for only a 6-hour workday. However, I asked the vocational expert if any work was available if the individual were able to sit/stand/walk throughout an 8-hour workday with an accommodation of a sit/stand option with all of the other restrictions in Exhibit D8F. The vocational expert testified that the individual would be capable of performing the jobs listed in hypothetical 1.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. I note that that DOT does not identify jobs with sit/stand options; but the vocational expert testified that it does give a range of jobs that can be performed within the sit/stand requirements noted above.

Based on the record as a whole, including the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10.     The claimant has not been under a disability, as defined in the Social Security Act, since September 15, 2009, the date the application was filed (20 CFR 416.920(g)).**

(Tr. 16, 18, 18-19, 22, 23-24, 24-25, 27, 28 & 29-30 (some emphasis supplied and some citations omitted).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

<u>**DISCUSSION**</u>

In supplemental security income cases where the claimant has no past vocationally-relevant work, as here, it is the Commissioner's burden to prove that the claimant is capable of performing work which exists in significant numbers in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The ALJ's articulation of specific jobs the claimant is capable of performing must be supported by substantial evidence. *Id.* (citation omitted). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

In this case, the plaintiff contends that the ALJ erred in improperly rejecting a portion of the residual functional capacity (RFC) assessment of Dr. Stanley Barnes, her treating physician, and additionally contends that the ALJ's RFC determination is not supported by substantial evidence.

The undersigned will consider these issues together but prior to doing so it is necessary for the Court to set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one, given the defendant's consistent stance in

---

[3]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

numerous cases presently pending before this Court that in past cases this Court has conflated the fourth and fifth steps of the sequential evaluation process with respect to who has the burden of developing the evidence necessary to determine residual functional capacity. (*See* Doc. 22, at 11-13.)

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'" *Hanna v. Astrue,* 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, *see* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes

a decision) is responsible for assessing your residual functional capacity."), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources. 20 C.F.R. § 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. § 416.945(a)(4).

> (b) *Physical abilities.* When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

> (c) *Mental abilities.* When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions

and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

(d)   *Other abilities affected by impairment(s).*   Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. § 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary

evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra,* an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's rejection of such opinion,[4] 223 Fed.Appx. at 923-924; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[5] *Compare, e.g.,*

---

[4]        An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security,* 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

[5]        In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician (Continued)

*Saunders v. Astrue*, 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the

ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds

occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six

hours in an eight hour workday, [] when the record does not include an evaluation of

---

"was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id*. at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a physician. *See id*. at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence. [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id*. (citing *Cole v. Barnhart*, 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.") *with* 20 C.F.R. § 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.
>
> **The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant

work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the

ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . .  There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

The Court now considers the issues raised by plaintiff, namely whether the ALJ erred in rejecting a portion of the residual functional capacity (RFC) assessment of Dr. Stanley Barnes, her treating physician, and whether the ALJ's RFC determination is supported by substantial evidence. Because the undersigned finds that the ALJ did not explicitly articulate an adequate reason, supported by substantial evidence, for rejecting a portion of Barnes' PCE assessment, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence.

> The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore [v. Barnhart]*, 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert, supra,* 396 Fed.Appx. at 655. In this particular case, the ALJ accorded "great weight" to Barnes' RFC opinion save with respect to "the limitation to only a total of six hours of work per workday." (Tr. 27.) One need only consider the vocational expert's testimony that a restriction to sitting, standing, and walking for a total of six hours out of an 8-hour workday "would be less than sedentary or light[work,]" (Tr. 59-60) to understand the ALJ's need to reject this portion of Barnes' RFC opinion. The entirety of the ALJ's reasoning for rejecting this portion of Barnes' opinion is, as follows: "Dr. Barnes did not indicate why the claimant could stand for two hours at a time, but only do that once during the day. This appears to be a product of the form itself; but otherwise, this form is consistent with the residual functional capacity developed above." (Tr. 27.) Therefore, the sole "reason"[6] articulated by the ALJ for rejecting Barnes' RFC opinion that plaintiff can stand, ***at one time***, for 2 hours during an 8-hour workday, and that during an ***entire*** 8-hour workday she can stand for 2 hours (*see* Tr. 271),[7] is that Barnes' findings were a "product of the form itself[.]" (Tr. 27.) This reason for rejecting two of Barnes' crucial RFC findings is supported by no evidence, much less substantial evidence. The form (Tr. 271) speaks for itself and there simply can be no clearer way to pose the crucial sit/stand/walk "questions" than by juxtaposing how

---

[6]      Contrary to the defendant's argument, the ALJ did not articulate as a reason for rejecting Barnes' 6-hour opinion that such opinion "was inconsistent with other substantial evidence of record[.]"  (*See* Doc. 22, at 8.)

[7]      The ALJ does not explicitly reject Dr. Barnes' sit and walk RFC findings (*see* Tr. 27) which makes her rejection of the "stand" RFC findings curious.

much a person can sit/stand/walk "at one time" with how much she can sit/stand/walk in an "entire" eight-hour workday. In other words, the form is clear in the information it seeks from physicians completing it and if the ALJ had concerns about the manner in which Dr. Barnes completed the form, she should have addressed her concerns to plaintiff's treating physician. *See, e.g.,* 20 C.F.R. § 416.912(e)(1) (2011) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Because the reason for rejecting Dr. Barnes' "standing" RFC findings is not supported by substantial evidence, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence.

These are not the only problems with the decision denying benefits, however. In addition to the foregoing, the undersigned would also note that the ALJ failed to identify any reason for rejecting Barnes' opinion that drug side effects can be expected to be severe and to limit the claimant's effectiveness due to distraction, inattention and drowsiness (*see* Tr. 273). Indeed, the only comment the ALJ made about Barnes' pain assessment form, which also found that pain is present to such an extent as to be distracting to adequate performance of daily activities or work and that physical activity greatly increases pain to such a degree as to cause distraction from task or total abandonment of task (Tr. 272), is the following: "Dr. Barnes also noted pain being a distraction, which I have accounted for by limiting the claimant to unskilled work." (Tr.

27.)  Because Lortab 10 mg (*see, e.g.*, Tr. 279) is indicated for the relief of moderate to

severe pain and two of its most frequently reported side effects are drowsiness and

unclear thinking, *see*  http://www.rxlist.com/lortab-10-drug-center.htm (last visited

April 2, 2012 at 9:58 a.m.), on remand the ALJ need identify specific and adequate

reasons for rejecting Barnes' medication side effects finding. *See Gilabert, supra,* 396

Fed.Appx. at 655.

Finally, the undersigned finds an anomaly in the ALJ's reliance upon the

vocational expert's testimony to help her carry the Commissioner's fifth-step burden

which would be present even if the problems already identified did not exist. In this

case, the VE certainly identified jobs plaintiff could perform based upon a modification

of Barnes' findings on the physical capacities evaluation form (*compare* Tr. 58 *with* Tr.

60); there was no testimony by the VE, however, which included a combination of the

findings on Barnes' physical capacities evaluation form with those on the clinical

assessment of pain form (*see* Tr. 57-60) as the ALJ suggests in her opinion (*compare* Tr. 27

("Dr. Barnes also noted pain being a distraction, which I have accounted for by limiting

the claimant to unskilled work. As discussed below, the vocational expert identified

jobs consistent with Dr. Barnes' opinion in D8F with the sit/stand option.") *with* Tr. 30

("I asked the vocational expert if any work was available if the individual were able to

sit/stand/walk throughout an 8-hour workday with an accommodation of a sit/stand

option with all of the other restrictions in Exhibit D8F. The vocational expert testified

that the individual would be capable of performing the jobs listed in hypothetical 1.")).

Indeed, the sole instance in which the ALJ questioned the VE about pain (specifically

19

headache pain), the VE testified that the claimant would not be able to maintain employment. (Tr. 59.) Accordingly, the failure of the ALJ to include within her hypothetical to the VE some description of the admittedly distracting nature of plaintiff's pain (Tr. 27), *see Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (the ALJ is not required to include in his hypothetical findings that he properly concludes are unsupported), makes it impossible for this Court to find that the hypothetical posed to the VE, and relied upon by the ALJ, is supported by substantial evidence, *see, e.g., Ingram v. Commissioner of Social Security Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) ("'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"). Accordingly, the Commissioner has not carried his fifth-step burden in this case.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[8] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to

---

[8]     Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is proper under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final decision of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal

Access to Justice Act, 28 U.S.C. § 2412,  *Shalala  v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625,

125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 5th day of April, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**